IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | | |
|---|---|---|
| JUDITH FICEK, | ) | CV 09-39-H-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| KOLBERG-PIONEER, INC.; BELGRADE | ) | |
| STEEL TANK CO.; and JOHN DOES 1-5; | ) | |
| and JOHN DOES 6-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  Introduction

Plaintiff Judith Ficek ("Ficek") brought this negligence and product liability

action against the Defendants based on a worksite accident.  After the accident, the

contractor completed a narrative incident report.  No one witnessed the accident,

and the report consists of opinions as to what happened based, in part, on

speculation and hearsay offered by the truck driver who was present but did not observe the incident.  Ficek now moves for a ruling on the admissibility of the report.  At the same time, Defendants move to exclude the same.  For the reasons that follow, the report is excluded.

## II.  Background

Ficek was employed by Envirocon as a pug mill operator at a mine reclamation and site cleanup in Rimini, Montana.  Envirocon had a subcontract with CDM Federal Programs Corporation ("CDM"), who in turn had been hired by the Environmental Protection Agency as the main contractor on the project.

On October 3, 2006, Ed Blome, a delivery driver for Dick Irvin Trucking, delivered bentonite to the site.  He connected a hose between his truck and the pug mill's silo, and about five to ten minutes after he began pumping bentonite into the silo he heard a noise and found Ficek laying ten to fifteen feet from the silo.  Ficek does not remember what happened, and no one else witnessed the incident.

Joe Ocken, a member of Envirocon's Health & Safety Department, prepared a "Narrative Report of Incident" (the "Report").  The nineteen-page Report is dated November 11, 2006, and consists of a description of the incident, photographs, findings of fact including causation, and corrective actions and recommendations.  The Report concludes that a buildup of materials in the silo

produced an unusual increase in air pressure, the materials cemented together the vents and pop-off valves preventing pressure relief, and the increase in pressure caused the hatch to strike Ficek on the side of the head.  Narrative Incident Report, Nov. 11, 2006 (dkt #93-1).

According to Ocken, because Ficek did not remember what happened and there were no other witnesses, the Report and its account of "how the incident had occurred" was largely based on a statement made by Blome.  Ocken Dep. 156:1-21, June 29, 2010 (dkt #169-2).  Blome signed a written, undated statement that provides Ficek saw "product blow out the bottom" and she climbed up the ladder to open the hatch at which time the pressure in the tank caused the hatch to hit her. Blome Statement (dkt #114-3).  In deposition, Blome testified that he presumes someone asked him to write that statement, but he does not remember whether it was his boss or someone else.  Blome Dep. 56:19-24, 60:4-8, May 3, 2010 (dkt #93-3).  Despite Blome being the "most proximate witness" to the incident, Ocken Dep. 156:21, Ocken never interviewed him; nor did anyone else from Envirocon. Blome Dep. 63:24-64:19.  Ocken also relied upon a statement made by Ficek and discussions she had with Tim Tierney about the incident.  Ocken Dep. at 146:18-22.

Ocken testified that the Report makes an "educated guess" as to what

happened in the accident.  Id. at 95:19.  He explained that he never did any testing to verify the assumptions in the Report, id. at 164:6-11, and he made no determination of probability as to what actually occurred.  Id. at 96:9-14.  He also stated that the Report is "not intended to document facts so much as to determine corrective actions."  Id. at 100:8-9.  Upon completion, the Report was reviewed by numerous departments of Envirocon, id. at 84:21-85:21, and sent to a manager at CDM who reviewed it to see if "any issues that needed to be addressed were being addressed."  Swanson Dep. 52:15-16, Mar. 17, 2010 (dkt #114-8).

On November 5, 2010, Defendants CDM Federal Programs Corporation and Camp Dresser & McKee, Inc. filed a motion to exclude the Report.  Defendant Kolberg-Pioneer, Inc. ("Kolberg") joined the motion on November 18, 2010, and Defendant Belgrade Steel Tank Company, Inc. ("Belgrade") joined on November 24, 2010.  On November 10, 2010, Ficek moved for a ruling that the Report is admissible.  Neither side sought, in the alternative, that the Report be admitted or excluded in part.  Defendants CDM Federal Programs Corporation and Camp Dresser & McKee, Inc. have since settled with Ficek.[1]  Although the parties raise

---

[1]Defendants' motion to exclude the Report was filed as part of an omnibus motion.  (See dkt #90.)

numerous alternative grounds on which to admit[2] or exclude the Report, the issue boils down to whether the Report can come in under the business record exception to hearsay.

### III. Analysis

As an out of court statement offered to prove the truth of the matters asserted therein, the Report is hearsay. <u>See</u> Fed. R. Evid. 801. Ficek concedes so much, but insists it is admissible under the hearsay exception for records of regularly conducted activity. Federal Rule of Evidence 803(6) provides for the admission of:

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

In the Ninth Circuit, such records are admissible when "the writing is made or transmitted by a person with knowledge at or near the time of the incident

---

[2]Ficek argues the report is admissible as an admission of a party opponent, but since Defendants CDM Federal Programs Corporation and Camp Dresser & McKee, Inc. settled and are no longer a part of this action, the argument is no longer applicable.

recorded, and [] the record is kept in the course of regularly conducted business

activity." Sea-Land Serv., Inc. v. Lozen Intern., LLC., 285 F.3d 808, 819 (9th Cir.

2002).  As part of this requirement, the information in the business record must

come from someone with personal knowledge of the underlying event, and the

"supplier of information" must have been "act[ing] in the regular course" of

business.  Fed. R. Evid. 803(6) advisory committee's notes; see also United States

v. Pazsint, 703 F.2d 420, 424 (9th Cir. 1983) ("[The business record] exception

applies only if the person furnishing the information to be recorded is acting

routinely, under a duty of accuracy, with employer reliance on the result.' ").

Here, the Report sought to be admitted incorporates Blome's statement, and

Ocken testified that the statement provided "most of [the] basis for how the

incident occurred."  Ocken Dep. 156:3-7.  Blome, however, did not work for

Envirocon and cannot remember who requested he provide a statement.  As such,

the statement was not made under a duty of accuracy to Envirocon, and the Report,

which incorporates the statement, does not qualify as a business record.[3]  See Fla.

Canal Indus, Inc. v. Rambo, 537 F.2d 200, 202 (5th Cir. 1976) (excluding a Coast

---

[3]Ficek seeks to evade such an outcome by citing Lewis v. Baker, 526 F.2d 470 (2d Cir. 1975).  In Lewis, the Second Circuit affirmed the admission of an accident report even though it was based on information supplied by a third party, but, unlike here, the third party worked for the business and assisted in the preparation of the report as part of his duty to his employer.  Id. at 472.

Guard report incorporating a statement not made in the regular course of business).  Additionally, the Report includes numerous instances where the author assumed what happened due to a lack of information.  For example, Ocken "assumed that [Ficek] was able to get to the clamp and at least begin to loosen it." Narrative Incident Report at 13.  Without personal knowledge to support such information, the Report lacks the proper foundation to qualify as a business record.

Even if the Report qualified as a business record, it still is inadmissible if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness."  Fed. R. Evid. 803(6); see also United States v. Ordonez, 737 F.2d 793, 805 (9th Cir. 1984).  Such is the case here, where the opinions and conclusions in the Report were drawn from an inadequate basis of facts and data. As discussed above, the Report cannot be traced back to anyone with personal knowledge of the incident.  Moreover, although Blome was the "most proximate witness," Ocken only relied on Blome's brief, undated hearsay statement and never interviewed him.  Ocken Dep. 145:7; 156:21.  If he had, Ocken would have learned that Blome was uncertain about what happened at the accident–such as whether Ficek loosened or tightened the hatch at the time of accident–because he "didn't see what was going on over there."  Blome Dep. 57:9-12.  Despite the lack

of firsthand information, Ocken did not support his theories as to what happened by investigating how much pressure it would take to cause the hatch to open, or determine whether the safety valves were functioning or adjusted properly. Ocken Dep. 135:15-137:23. Given these shortcomings, it is unsurprising that Ocken testified that the Report does not determine the "most probable cause" of the accident, but instead offers an "educated guess" as to what happened. Id. at 95:19; 96:14. Ocken also testified that the Report is "not intended to document facts so much as to determine corrective actions." Id. at 100:8-9. This speculative, unsupported record does not provide indicia of trustworthiness, and the Court shall accordingly exclude the Report.[4]

### IV.  Conclusion

The Report lacks a foundation of personal knowledge for some of its findings and conclusions, is based on inadmissible hearsay, and also lacks indicia of trustworthiness. It contains hearsay within hearsay. Accordingly, Defendants' Motion in Limine Omnibus (dkt #90) is GRANTED IN PART. The Motion is

---

[4]Ficek insists the Report is trustworthy based on the fact that Envirocon reviewed and relied upon it, but she ignores that Envirocon relied on the Report not to document facts but to determine corrective actions. Such reliance, especially given the shortcomings discussed above, does not provide assurance that the factual findings of what happened are trustworthy. Ficek also contends the Report is admissible under the residual exception to the hearsay rule. Fed. R. Evid. 807. That rule, however, allows for the admission of statements that have "circumstantial guarantees of trustworthiness," id., something the Report lacks.

granted as to the exclusion of Envirocon's Narrative Report of Incident and

DENIED AS MOOT in all other respects.  Plaintiff's Motion (dkt #113) seeking

admission of the same document is DENIED.

Dated this 29th day of March, 2011.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT